Filed 4/15/16  In re Sawyer H. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re SAWYER H., a Person Coming Under the Juvenile Court Law. | |
| | D068801 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ3849A) |
| v. | |
| MICHELLE H., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Michelle D. Peña, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Daniela Davidian, Deputy County Counsel, for Plaintiff and Respondent.

Neil R. Trop, under appointment by the Court of Appeal, for Minor.

Michelle H. contends that the juvenile court's finding that she was offered or provided reasonable family reunification services is not supported by substantial evidence, and that she is entitled to six additional months of services. The San Diego County Health and Human Services Agency (the Agency) asserts that this court need not reach the merits of Michelle's arguments because the juvenile court did not have legal authority at the six-month review hearing to terminate reunification services and select a permanent plan of long-term foster care for Michelle's son, Sawyer H., and therefore, reversal is required on procedural grounds. Sawyer, who became a nonminor dependent during the course of this appeal, states that he does not wish to reunify with his mother and asks this court to dismiss the appeal as moot under Welfare and Institutions Code section 361.6.[1]

We deny Sawyer's request to dismiss the appeal as moot. While section 361.6 may apply in this case, the statutory scheme vests the decision whether to provide further reunification services to a parent of a nonminor dependent in the juvenile court.

We reject the argument that reversal is required because the juvenile court lacked authorization to terminate reunification services at the six-month review hearing. The parties have forfeited the issue of whether Sawyer was a member of a sibling group, as defined in section 361.5, subdivision (a)(1)(C), by failing to raise the issue at trial. Thus, the juvenile court had the authority to terminate reunification services at the six-month hearing under section 366.21, subdivision (e)(3). We agree with the Agency that the

---

[1]     Statutory references are to the Welfare and Institutions Code.

2

juvenile court acted in excess of its jurisdiction when it selected a permanent plan of another planned permanent living arrangement (APPLA) for Sawyer at the six-month hearing; however, we conclude that the error does not require reversal.

We further conclude that the Agency did not use best practices to provide therapeutic services to Sawyer after the dispositional hearing, but that there is substantial evidence to support the finding that reasonable family reunification services were offered or provided to Michelle. Accordingly, we affirm the reasonable services finding.

## FACTUAL AND PROCEDURAL BACKGROUND

Michelle H. is the mother of Sawyer H., who is now 18 years old, and Olivia S., who is now two years old.[2] Sawyer does not know his father. From 2010 to 2014, the Agency received 14 referrals alleging that Sawyer, and later, Olivia, were at substantial risk of harm due to Michelle's mental health condition. Michelle believed that there was a conspiracy against her family, that there were listening devices in the walls of her home, and that her family was being stalked.

Michelle's mental health deteriorated in 2013 and 2014. She refused to allow Sawyer to attend school or to leave home without her. During interviews with social workers, Sawyer presented with a flat affect and displayed no emotion. When a doctor diagnosed Sawyer with depression, Michelle accused the doctor of being part of the conspiracy against her.

---

[2]    Olivia was also adjudicated a dependent of the juvenile court but is not a subject of this appeal. She is mentioned only where relevant to the issues on appeal.

3

During a child protective investigation in November 2014, Sawyer told a social worker, "I do nothing, stare and sit and sleep all day." He said that he had never had any friends. While Michelle was talking to the social worker about the conspiracy against her, 16-year-old Sawyer came out of his bedroom, sat down next to the social worker, and began to cry.

The Agency filed a petition under section 300 alleging that as a result of Michelle's paranoia, Sawyer's physical and emotional health was deteriorating, and he was at substantial risk of harm. Michelle was hospitalized for three weeks after the detention hearing. Doctors diagnosed her condition as paranoid schizophrenia and prescribed an antipsychotic medication for her.

The Agency detained Sawyer in a foster home. The social worker observed that Sawyer was happy, friendly and engaged. He was doing well in a transition program to a regular high school. When the social worker tried to set up visitation between Michelle and Sawyer, Sawyer said that he did not want to have in-person visits with his mother until she was more stable, but was willing to talk with Michelle by telephone twice a week. During her telephone calls, Michelle told Sawyer that his foster family was going to hurt him, and that the Agency and the foster family were part of the conspiracy against her. After several weeks, Sawyer decided that Michelle's mental health condition was not improving and he refused to talk to Michelle.

By the time of the disposition hearing in February 2015, Sawyer and Olivia were living in separate foster care homes. The Agency did not intend to place the siblings together in a permanent home if reunification efforts failed. Michelle's case plan required

4

her to engage in individual therapy, meet regularly with her psychiatrist, complete two psychological evaluations, and participate in a parenting education program. The juvenile court ordered the Agency to provide individual therapy to Sawyer, and conjoint therapy to Sawyer and Michelle, when therapeutically appropriate.

The social worker had difficulty locating a therapist who could accommodate Sawyer's school schedule. Shortly before the disposition hearing, the social worker referred Sawyer to a therapist. However, Sawyer's foster parents found it difficult to transport him to that therapist, and they had difficulty locating another therapist from the list provided by the social worker.[3] As a result, Sawyer did not begin therapy until May, approximately three months after the disposition hearing.

Michelle participated in a psychological evaluation with Francesca Lehman, Psy.D. Lehman diagnosed Michelle's mental health condition as Delusional Disorder, Persecutory Type, Continuous and Anxiety Disorder Not Otherwise Specified (NOS). Lehman considered, but did not make, a diagnosis of Paranoid Personality Disorder. Lehman said that Michelle was not incapable of utilizing reunification services, but that her mental health condition severely impaired her ability to benefit from such services.

Michelle participated in a second psychological evaluation with Walter J. Litwin, Ph.D. He diagnosed her mental health condition as Posttraumatic Stress Disorder, Psychotic Disorder NOS, Rule Out Delusional Disorder, Persecutory Type, and Paranoid Personality Disorder. Litwin said that, with medication, Michelle had made modest

---

[3]      There was a change in social workers after the disposition hearing.

improvement in her mental health condition in the last six months, but she continued to suffer from symptoms of severe mental illness. Michelle's paranoid character traits impeded her ability to benefit from reunification services.

Brenda Mack, M.F.T., provided therapeutic services to Michelle from March to May 2015. Mack said that Michelle had fixed delusions that did not change. Those delusions impacted Michelle's ability to function. In her final report, Mack said that Michelle's condition required "consistent, long-term therapeutic intervention, which could include a specialist in dealing with Paranoid Personality Disorder, Day Treatment Program, and Medication Management, with a time frame beyond the mandates of the Court." When Mack went on leave, the Agency referred Michelle to another therapist.

In reports prepared for the six-month hearing in July, the Agency asked the juvenile court to terminate reunification services and select a plan of APPLA for Sawyer. The social worker reported that he had asked Sawyer every month about his willingness to have contact with his mother through in-person visits, cards and letters, or telephone calls. Sawyer continued to refuse any form of contact with his mother, and did not want to visit Olivia. He did not present as angry, scared, upset or agitated. Sawyer was doing well in his foster home. He did not exhibit any symptoms of depression. Sawyer had completed 11th grade at a regular high school. Sawyer's therapist said that unless Sawyer wanted to engage in conjoint therapy with his mother, it would not be an appropriate intervention.

The social worker reported that Michelle did not understand why the children had been removed from her care. Michelle maintained that she was the victim of a

6

government conspiracy. Although Michelle consistently participated in therapy and other services, her mental health condition showed little improvement. Michelle regularly saw a psychiatrist for medication management.

At the conclusion of the contested six-month hearing, the juvenile court found that return to Michelle's custody would create a substantial risk of detriment to Sawyer. The court found that reasonable services had been provided and that Michelle had not made substantive progress with her case plan. The court terminated reunification services on the ground that Sawyer was a member of a sibling group with one member under three years of age and ordered a permanent plan of APPLA for Sawyer.

DISCUSSION

I

*The Appeal Is Not Rendered Moot by Section 361.6*

Sawyer states that he does not wish to reunify with his mother and asks this court to dismiss the appeal as moot under section 361.6. An appeal becomes moot when, through no fault of the respondent, the occurrence of an event renders it impossible for the appellate court to grant the appellant effective relief. (*In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1054.)

Section 361.6 governs the provision of reunification services for a nonminor dependent. It states, in relevant part: "Notwithstanding any other law, the court may order family reunification services to continue for a nonminor dependent, . . . if the nonminor dependent and parent, parents, or legal guardian are in agreement and the court finds that the continued provision of court-ordered family reunification services is in the

7

best interests of the nonminor dependent and there is a substantial probability that the nonminor dependent will be able to safely reside in the home of the parent or guardian by the next review hearing. ¶ If the nonminor dependent or parent, parents, or legal guardian are not in agreement, or the court finds there is not a substantial probability that the nonminor will be able to safely reside in the home of the parent or guardian, the court shall terminate family reunification services to the parents or guardian." (§ 361.6, subd. (a).) Any motion to terminate court-ordered family reunification services for a nonminor dependent prior to the hearing under section 366.31 *shall* be made under section 388, subdivision (c). (§§ 361.6, subd. (c) (italics added), 366.31, subd. (d).)

Section 388, subdivision (b) provides, in relevant part, that any party, including a nonminor dependent, may petition the court prior to the review hearing set pursuant to section 366.31, subdivision (d), to terminate the continuation of court-ordered family reunification services for a nonminor dependent who has attained 18 years of age. The court shall terminate family reunification services if the nonminor dependent or parent are not in agreement that the continued provision of court-ordered family reunification services is in the best interests of the nonminor dependent. (§ 388, subd. (c)(4).) A section 366.26 hearing shall not be ordered. Instead, the court may order an eligible nonminor dependent to remain in a planned, permanent living arrangement. (§ 388, subd. (c)(5).)

The record does not show that the juvenile court made any findings under sections 361.6 or 366.31, subdivision (d), as required under the statutory scheme.[4]  Thus, the intervening event that would render this appeal moot has not occurred.  As a reviewing court, we cannot make the findings that are required under section 361.6.  That is the province of the juvenile court.  (*In re Zeth S.* (2003) 31 Cal.4th 396, 405 [trial court decides questions of fact; appellate court decides questions of law].)

II

*The Issue of Whether Sawyer Was a Member of a Sibling Group*
*Has Been Forfeited on Appeal*

The Agency asserts that the juvenile court erred when it found that Sawyer was a member of a sibling group, as defined in section 361.5, subdivision (a)(1)(C), (qualified sibling group), and asks this court to reverse the orders terminating reunification services and selecting a permanent plan of APPLA for Sawyer.  The Agency implicitly contends that the juvenile court's orders are contrary to statute, and subject to collateral attack as

---

[4]  The six-month review hearing, which was held on August 13, 2015, was the last review hearing before Sawyer reached the age of 18.  The juvenile court did not provide the advisements required under section 366.31.  "If a review hearing is the last review hearing to be held before the minor attains 18 years of age, the court shall ensure all of the following:  (1) The minor's case plan includes a plan for the minor to satisfy one or more of the participation conditions described in paragraphs (1) to (5), inclusive, of subdivision (b) of Section 11403, so that the minor is eligible to remain in foster care as a nonminor dependent.  (2) The minor has been informed of his or her right to seek termination of dependency jurisdiction pursuant to Section 391, and understands the potential benefits of continued dependency.  (3) The minor is informed of his or her right to have dependency reinstated pursuant to subdivision (e) of Section 388, and understands the potential benefits of continued dependency."  (§ 366.31, subd. (a); see also (§ 366.31, subd. (b) [describing the agency's reporting obligations at the review hearing that occurs in the six-month period prior to the minor's attaining 18 years of age, and at every subsequent review hearing for the nonminor dependent].)

9

having been made in excess of jurisdiction.  " '[A]n act in excess of jurisdiction is valid until set aside, and parties may be precluded from setting it aside by such things as waiver, estoppel, or the passage of time.' "  (*In re Andres G.* (1998) 64 Cal.App.4th 476, 482 (*Andres G.*).)

At the six-month review hearing, the Agency asserted that Sawyer and Olivia were a qualified sibling group because Olivia was under three years of age and the children could not be safely returned to their mother's care.  The Agency asked the juvenile court to terminate reunification services under section 366.21, subdivision (e), which permits the juvenile court to terminate reunification services for all members of a qualified sibling group, even those three years of age or older, at the six-month hearing for the purpose of placing and maintaining a sibling group together in a permanent home. (§ 361.5, subd. (a)(1)(C).)

Although the record does not contain any evidence to show that the Agency intended to place the children together in a permanent home, Michelle did not object to the finding that Sawyer was a member of a sibling group.  (*In re Dakota H*. (2005) 132 Cal.App.4th 212, 222 [doctrine of forfeiture is intended to prevent a party from standing by silently until the conclusion of the proceedings].)  Thus, we conclude that the Agency has forfeited its argument that the juvenile court was without authority to terminate reunification services at the six-month review hearing.[5]

---

[5]     If a party wishes to terminate reunification services for a dependent child who was three years of age or older at the time of removal, and who is not a member of a qualified

*The Juvenile Court Erred in Selecting APPLA at the Six-Month Review Hearing;*
*The Error Does Not Require Reversal*

At the six-month hearing, if the child is a member of a sibling group described in section 361.5, subdivision (a)(1)(C), and the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the court may schedule a section 366.26 hearing within 120 days. If the court finds that there is a substantial probability that the child may be returned to his parent within six months or that reasonable services have not been provided, the court shall continue the case to the 12-month permanency hearing.  (§ 366.21, subd. (e)(1)(3).) Section 366.21, subdivision (e), does not authorize the juvenile court to select and implement a permanency plan, including APPLA, at the six-month review hearing.  Thus, the juvenile court's act is voidable.  (*In re Z.S.*, *supra*, 235 Cal.App.4th at p. 770.)

When a court with fundamental jurisdiction over the persons and subject matter in question acts contrary to a statutory procedure or applicable rules, it does not act without jurisdiction, but rather in excess of jurisdiction.  (*In re Angel S.* (2007) 156 Cal.App.4th 1202, 1209.)  " 'Acts in excess of jurisdiction are not void in any fundamental sense but

---

sibling group, the party is required to adhere to the requirements set forth in section 388, subdivision (c).  (§ 361.5, subd. (a)(2).)

Under section 388, subdivision (c), the court may terminate reunification services on a finding that there is a change of circumstance or new evidence that satisfies a condition under section 361.5, subdivision (b) or (e) [reunification bypass provisions] or that the action or inaction of the parent creates a substantial likelihood that reunification will not occur, and that reasonable services have been offered and provided.  (§ 388, subds. (c)(1)(A) & (B), (c)(4).)  If the court terminates reunification services prior to the 12-month review hearing, it must set a hearing under section 366.26 within 120 days. (§ 388, subd. (c)(5).)

are, at most, voidable if properly raised by an interested party.' " (*In re Z.S.* (2015) 235 Cal.App.4th 754, 770.) Thus, the juvenile court's order implementing a permanent plan of APPLA at the six-month review hearing is voidable.

Reviewing courts have repeatedly allowed acts in excess of jurisdiction to stand when the acts were beneficial to all parties and did not violate public policy. On the other hand, courts have voided acts in excess of jurisdiction when the irregularity was too great, or when the act violated a comprehensive statutory scheme or offended public policy. (*Andres G.*, *supra*, 64 Cal.App.4th at pp. 482-483.)

Upon terminating reunification services in Sawyer's case, the juvenile court should have set a section 366.26 hearing within 120 days. At a section 366.26 hearing, if the child is not adoptable and there is no one willing to accept legal guardianship, the court must order the child to remain in long-term foster care. (§ 366.26, subd. (b)(7).) Alternatively, the juvenile court could have set a permanency hearing under section 366.21, subdivision (f), which must be held *no later* than 12 months after the date the child entered foster care. (Emphasis added.) At a permanency hearing, the juvenile court has the authority to order that the child remain in foster care if a section 366.26 hearing cannot be held before the child attains 18 years of age, or on a finding, by clear and convincing evidence, that it is not in the child's best interest to hold a section 366.26 hearing because the child is not a proper subject for adoption and has no one willing to accept legal guardianship. (§ 366.21, subd. (g)(5).)

There is no evidence in the record to show that Sawyer would have been adopted in a reasonable time if parental rights were terminated or that there was someone willing

12

to accept legal guardianship. The juvenile court found that Sawyer was not able to safely return to his mother's care. At the time of the six-month review hearing, the only feasible option was Sawyer's continued placement in foster care. Thus, the court's order comports with substantive aspects of the statutory scheme and public policy, and the irregularity is not too great. In reaching this conclusion, we also consider that the juvenile court is required to hold regular review hearings under sections 366.3 and 366.31, and must review the propriety of a permanency plan of APPLA.

IV

*The Record Shows that the Agency Offered or Provided*
*Reasonable Family Reunification Services*

Michelle contends that the juvenile court erred when it found that reasonable services were provided. Michelle argues that she did not receive specialized therapeutic services or a day treatment program, and that the Agency did not seek a third opinion after receiving conflicting diagnoses of Michelle's mental health condition. She argues that she was not properly medicated. Michelle also asserts that reunification was impeded because the Agency did not provide therapy services to Sawyer for almost seven months. Michelle argues that the juvenile court erred when it found that she had not made substantial progress with her case plan because the evidence showed that the Agency made it impossible for her to do so by failing to provide services that were tailored to her mental health needs.

Family reunification services play a critical role in dependency proceedings. (§ 361.5; *In re Alanna A*. (2005) 135 Cal.App.4th 555, 563; see 42 U.S.C. § 629a(a)(7).)

Services "may include provision of a full array of social and health services to help the child and family and to prevent reabuse of children." (§ 300.2.) Reunification services should be tailored to the particular needs of the family. (*David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 793-794.) The Legislature has charged the social services agency with providing reasonable family reunification services. (*In re Taylor J.* (2014) 223 Cal.App.4th 1446, 1452 (*Taylor J.*).)

At each review hearing, if the child is not returned to his or her parent, the juvenile court is required to determine whether "reasonable services that were designed to aid the parent . . . in overcoming the problems that led to the initial removal and the continued custody of the child have been provided or offered to the parent . . . ." (reasonable services finding). (§§ 366.21, subds. (e) & (f), 366.22, subd. (a).) The adequacy of reunification plans and the reasonableness of the Agency's efforts are judged according to the circumstances of each case. (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164.) To support a finding that reasonable services were offered or provided to the parent, "the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult . . . ." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414 (*Riva M.*).) " 'The remedy for a failure to provide reasonable reunification services is an order for the continued provision of services.' " (*Taylor J.*, *supra*, 223 Cal.App.4th at p. 1453.)

14

We are not persuaded by the argument that Michelle did not receive reasonable services because the Agency and the court did not resolve the disparities between the psychological evaluations, assess her medications, or provide her with specialized therapeutic services or a day treatment program. The purpose of the two psychological evaluations was to assess Michelle's ability to benefit from reunification services and to safely parent her children. The evaluators' conclusions were similar. Litwin concluded that Michelle's paranoid character traits impeded her ability to benefit from reunification services. Lehman concluded that Michelle's mental health condition severely impaired her ability to benefit from reunification services.

Michelle does not show that resolution of the differences in the evaluators' assessments of her mental health condition was necessary in order for her to receive appropriate psychiatric care and medication. We presume that the psychiatrist who was regularly treating Michelle drew his own conclusions about the most effective way to treat her mental health condition. "Reasonable services" does not mean that the Agency and the court are required to micromanage Michelle's psychiatric treatment. Indeed, it would be inappropriate for a social worker or the court to interfere in the doctor/patient relationship. We also reject the argument that the medication services provided to Michelle were not reasonable under the circumstances.

Michelle argues that she did not receive reasonable therapeutic services because therapist Mack recommended that Michelle see a therapist who specialized in treating Paranoid Personality Disorder or participate in a Day Treatment Program. Michelle misreads Mack's letter, which states that Michelle's condition required "consistent long-

term therapeutic intervention, which could include a therapist dealing with Paranoid Personality Disorder, Day Treatment Program, and Medication Management, with a time frame beyond the mandates of the Court." The social worker testified that Mack had mentioned those options as possibilities, but that Mack never specifically recommended a particular course of treatment. Mack said that Michelle was high functioning and that a day treatment program would not be entirely appropriate for her. Both Mack and Michelle's subsequent therapist were skilled in treating persons with personality disorders. The record contains ample evidence to show that the Agency provided reasonable therapeutic services to Michelle.

Michelle argues that the reasonable services finding is not supported by substantial evidence because the Agency did not provide therapeutic services to Sawyer for almost seven months after he was removed from Michelle's care. The record shows that the Agency made diligent efforts to locate an appropriate therapist for Sawyer beginning shortly after he was detained in protective custody. The social worker referred Sawyer to a therapist only to learn that that therapist could not accommodate Sawyer's school schedule. The record permits the reasonable inference that Sawyer's reintegration into a school system with his peers was a priority. The social worker located another therapist for Sawyer within a week and promptly submitted a referral to that therapist.

A new social worker was assigned to the case shortly after the February 3 dispositional hearing. The record does not show the timeline of the Agency's subsequent efforts to provide therapy services to Sawyer. In reports prepared for the six-month hearing, the social worker reported that the foster parents had difficulty transporting

16

Sawyer to the therapist to whom he had been referred in January.[6] The social worker provided four additional referrals to the foster parents, but none of those therapists could see Sawyer within a reasonable time. The social worker made a referral to another therapist on May 11, 2015. The social worker spoke to Sawyer's therapist on June 30, who said that the therapy sessions had been focused on building the therapeutic relationship and that Sawyer was not ready to process neglect. By the time of the six-month review hearing, Sawyer had been receiving therapy for approximately three months.

Michelle contends that visitation did not occur as a result of the delay in providing therapeutic services to Sawyer. We are not persuaded by the argument that the delay in providing therapy to Sawyer thwarted conjoint therapy between Sawyer and Michelle, and prevented visitation. The record shows that Michelle's therapist said that Michelle was not ready to begin conjoint therapy with Sawyer. To begin conjoint therapy, the parent must be able to accept responsibility for neglecting his or her child. Michelle refused to discuss the protective issues in the case with her therapists, insisting that she and her children were victims of a conspiracy to harm them.

The Agency should have used better practices in promptly implementing Sawyer's court-ordered therapy. However, the family reunification case plan properly focused on

---

6    In view of the difficulties in finding a therapist for Sawyer, it would have been the better practice to offer transportation assistance to Sawyer instead of waiting several more months to provide court-ordered therapy to him. The Agency is required to make reasonable efforts to assist the family in areas where compliance proves difficult, including providing transportation services. (*Riva M*., *supra*, 235 Cal.App.3d at p. 414.)

providing services to improve Michelle's mental health condition or, at minimum, her understanding of her mental health condition. We acknowledge that the record shows that Michelle diligently participated in services. Despite receiving ample services, Michelle's difficult-to-treat mental health condition impeded her progress. Although we are concerned about the Agency's delay in providing therapeutic services to a traumatized child, the record contains substantial evidence to support the finding that under the totality of the circumstances, the Agency offered or provided reasonable services that were designed to aid the parent in overcoming the problems that led to the initial removal and the continued custody of the child. (§ 366.21, subd. (e)(8).)

DISPOSITION

The order is affirmed.

AARON, J.

WE CONCUR:

McCONNELL, P. J.

BENKE, J.

18